Morning, Your Honors. May it please the Court. My name is William Lang. I represent Lake Metropolitan Housing. At the table for the appellant is my associate, Suzanne Eucytus, a member of the Bar of this Court. Steve Knotts acted quickly when he received a number of complaints from employees about supervisory personnel, Patricia Englund and Linda Mengelkamp. And with the After he consulted counsel, as he had in the past on disciplinary matters, he acted quickly, fired Patricia Englund and Linda Mengelkamp. I don't know if he should have acted so impulsively, but he was in a situation where he had taken over a housing authority, a public housing authority that HUD had designated as being troubled. He had HUD Office of Inspector General in the building investigating. He had already fired 17 other people and the employees didn't like him. The trial court, during the trial, at the conclusion of the evidence, rather than charge a jury upon elements of the plaintiff's claim of retaliation, blurred the lines between the participation clause and the opposition clause of 42 U.S.C. 2000 E-3A. Can you say that because of the word investigation? The court instructed the jury that the protected activity they were supposed to determine was investigating and making recommendations regarding complaints made to her, which was part of her job. But the participation clause says participating in any manner in an investigation is a protected activity. When the judge indicates to the jury that investigating is for some reason opposition, it blurs the lines between the two clauses, which this court and But it's not that unusual to have two prohibited activities not have some overlap. When you think of a Venn diagram, I mean, there's going to be overlap of some activities and they can hit both. And that doesn't mean that when the instruction that's about, say, the first activity covered mentions a word in the second activity covered that somehow you've got a problematic instruction. Well, I could not find any case law that supported the instruction given by the judge. In talking about an opposition claim? In an opposition claim, yeah. The specific language, the explicit language of the participation clause includes investigation. And when the judge uses that word... Not allowed to oppose a discriminatory investigation? She did not do that. No. I'm asking you this in the abstract. You've got this idea that the word investigation can't appear in an opposition claim. And I'm just saying that's not necessarily right. You can have opposition claims that grow out of investigations or involve investigations. Certainly you can have opposition claims that grow out of an investigation. Right. Yes. If that happened, it would not be unusual for an opposition jury instruction to mention the word investigation. Because you tailor instruction. You don't just parrot the language of the statute in all jury instructions. You can do that. But often trial judges will tailor it to the circumstances of the case and the theory of the proponent and the theory of the opponent. I understand that. And I do understand that, having been sat in and tailored jury instructions while a judge, acting judge, by the way. But in this case, the plaintiff was not complaining of any discriminatory activity. She was investigating alleged, purported discriminatory activity. That is not opposition. And for the court to indicate that that was opposition to the jury, I mean, he might as well have told the jury, well, she's opposing discriminatory conduct by participating. And that's exactly what the argument has been. I don't, the courts have ruled that we have two distinct clauses here, two distinct sets of proof that are required. And to confuse the jury by saying that opposition is participating in an investigation, which is what she was doing, she didn't express personal opposition to these activities. It was her job to investigate as EEO officer. I thought during the period of investigation she threatened Knox with an EEOC filing. That, well, I think that's what the court said in the opinion on the motion for summary judgment. But the fact of the matter is she wrote that in a note and stuck it in a file and never told anybody about it. And it came to light only after she was discharged. So she did not notify anybody of that. You can't keep that to yourself. That's not opposition, keeping your opinion to yourself, writing it on a piece of paper and sticking it in a file somewhere and not telling anybody. She never confronted Mr. Knotts. She never told anybody else at the agency in authority of that. So how could that be opposition? It's personal opposition. What she was opposed to was Mr. Knotts interviewing a non-employee concerning an allegation of sexual misconduct against an employee, Erica Peavy. That was opposition not to discriminatory activity, but to the manner, the practice and office procedure, which in Booker, I think, is permitted. It is not opposition to a discriminatory activity and is not a protected activity. So I think the court made an egregious error in instructing a jury in that manner. If she complained of discrimination, which is what I submitted as an instruction, that is opposition to a protected activity. I've got the instruction in front of me. I think I do. It says the prohibition relates to investigating and making recommendations regarding the complaint of gender discrimination by investigating and making recommendations concerning the complaint of sexual harassment or both. I got that right. Right. I'm just not following this theory. I mean, someone can be opposed to what's happening, and one way to be opposed is to say enough is enough. I'm going to look into this myself, having looked into it, say here's what I think should happen. That's her job, Judge. Simply because she handles discrimination complaints doesn't mean that she receives some special protection when she makes a report that she's supposed to make. She's supposed to investigate. She does not express personal opposition to a protected activity when she just investigates and comes out with these recommendations, recommendations that Mr. Knott shouldn't have interviewed this person. But why isn't that? That's not opposition under the law. I'm sorry to interrupt. Go ahead. Can't the recommendation post-investigation be saying what they did was wrong? And how is that not opposition? I think that is not personal opposition to an activity. Because it's part of her job? It's part of the job. You thought the trial court judge made a number of egregious errors, didn't you? Are we going to get to some of the others? This one is the central one, right? I'm running out of time. Right. That is the central one. In addition to that, at trial, we proposed some interrogatories to be submitted to the juries on the issue of damages. Right. And as your time is running out, can I ask you a direct question? Sure. Are you looking for black-letter law from this circuit that every time there's a discrimination case that the jury interrogatory has to break out, back pay, compensatory damages, front pay, can't use simply a one-liner in the court's discretion? Yes, I am. Do you have some authority for that? Are there circuits requiring trial court judges to itemize the breakout of compensatory damages? If the court has to assess independently, I believe, whether or not front pay is reasonable, if the jury is not required to submit a figure for front pay, how can the court determine whether it's reasonable post-verdict? How can the court impose the damage limitation required by the code if portions of the verdict are subsumed in compensatory damages when they are not supposed to be considered under the cap limitation? It seems to me like you're making a weight of the evidence argument that there wasn't enough evidence to provide for front pay. If you look at the transcript, the plaintiff put evidence before the jury that the jury agreed with. I still believe that in order to impose a damage limitation, certain elements are not included in that calculation. And as to the damages limitations, this went to the jury on both state and federal charges, and the state court caps, state law caps were not exceeded? Well, that may be true, except that the... Well, that is true, right. saying there was no actual malice. The federal standard, the judge indicated, was met, and it went forward on the federal standard. That is subject to the damage cap, separate and apart from... You're saying before the jury instructions on punitive damages, the judge had already ruled out the possibility of punitive damages under state law? Yes, yes. Then why did you allow this instruction to go forward? The instruction was on reckless indifference, which is the federal standard. He did not instruct the jury on actual malice, which is the state standard. But just to complicate it further, there's state law out there that says reckless indifference is sufficient for punitive damage under Ohio law? No, it doesn't. No, it doesn't. You'll get your full rebuttal. I'm going to guess the other side has a few thoughts about some of the things you said. I think so. I'm eager to hear them, so thank you. Thank you, Your Honor. So what's going on with the punitive damages? Is what he just said true?  What Judge Gwinn, the district court judge, said was at the charging conference, in his opinion, he didn't find that there was evidence of actual malice. He didn't amplify what he meant by that, but he then went on to say he was going to charge on reckless indifference. So the real legal question, Your Honor, is under what circumstances is reckless indifference the same as, or in these circumstances, is that the same as the Ohio standard of malice? And as Judge Black pointed out, the Zoppo case, other cases do hold that Ohio has a malice standard. You must prove malice, but it goes into two branches. You can prove malice, actual malice, or you can prove conscious disregard for the rights of someone in a situation where there's a risk of doing great harm. The case law out of this circuit says that those two concepts are functionally equivalent, and when you charge under the federal standard of reckless indifference, you can apportion those damages to the Ohio side of the case, because it is the same test. And that's what Judge Gwinn did in this case. Counselor just told me that's not a correct statement of the law. He used a different, your question was slightly different, and so he responded correctly, but it's a difference without a distinction in terms of what I just said. You asked is reckless indifference the same as actual malice. Actual, no, it's, he used a slightly different phrase. The phrase in Ohio is conscious disregard, and that's the functional equivalency that this court has said warrants apportioning the damages over to the state side of the case. And that's all that occurred here. That's all that occurred here. But the judge instructed on the federal standard by sending it to the jury on reckless indifference, period, right? That is correct. And now we're going to sort of backdoor it into, oh, by the way, that actually applies to Ohio standard as well? It's no different than taking any instruction under Title VII, since this circuit and all circuits have decided that Title VII is the same as the state causes of action for civil rights violations, discriminatory activity, and taking a Title VII instruction in a case and allowing the jury to go forward. And in its determination, the court decides that it's a verdict that governs the state side of the case, too. It's no different. But, I mean, the broader point is we don't have to really issue a ruling on that. It sounded like both parties agreed that this was okay. That's correct, Your Honor. There was no objection to reckless indifference at the time that the judge indicated that that's how he was going to instruct. And that it would be under state and federal law. That's correct, Your Honor. In fact, the case was stipulated between the parties at final pre-trial as going forward on both bases. So why didn't you agree to an interrogatory, or your client's counsel below, agree on an interrogatory that broke it out as to compensatory damages, back pay, front pay? Because, Your Honor, I'm in favor of, first of all, telling the jury correctly what they are to do. And that instruction by that court in this case told the jury all of the elements necessary to decide a retaliatory discharge case. It simply, and then it told the jury what it needed to consider by way of damages. Under the rubric of compensatory damages, when it gave its interrogatory, it did lump those three things together. But the jury knew that they were to consider compensatory damages in the sense of pain and suffering. They were to consider back pay and front pay. And those instructions were given to it. For the court to simplify the jury's job, then, is also, I think, the responsibility of the district court judge. And interrogatories number three and four simply simplify the jury's job. I would also indicate that as to whether or not that prevents an examination of the verdict to determine or test its reasonableness. Judge Black, you are exactly correct. In this case, that's a weight of the evidence argument. And when you look at the transcript, the legal question becomes, is there really a reason to decide as a matter of law that it was unreasonable for the jury to come up with a compensatory award that included, we know it included, front pay, back pay, or they were invited to include front pay, back pay, and pain and suffering, when the award was under $200,000. It's $195,000. The compensatory damage award, pardon me, the cap under Ohio law for pain and suffering is $250,000. It's under that cap. If the whole thing was for pain and suffering, it's under the cap. And there's certainly, in the record, enough evidence to say that kind of award, even for pain and suffering, would not have been unreasonable as a matter of law. And this lumping it all together under one category of compensatory damages, you call that what, technically incorrect under Ohio law? No. I say there's discretion on the part of the trial judge who has heard the evidence to tailor the instructions so the jury's job does not become overly complex. He heard the evidence. Judge Gwinn knew that there was very little likelihood that there would be a runaway verdict in this case on any of the category of damages. He had heard evidence from the plaintiff's economic expert that the total economic loss was $117,000. He knew that the plaintiff did not need extensive medical care or other extensive treatment as a result of what she went through in terms of depression following the discharge. So he simply used his common sense as an experienced jurist and decided, I've got other tools available if I get a runaway verdict, but I'm going to make this simple. I think that's within his discretion. What about the point that on the opposition clause that the instruction really just describes her job responsibilities? I mean, and even if you disagree with that, I mean, could you have an instruction like this if it related to somebody who had the duty in the company to investigate and make recommendations about gender discrimination? I wrote down the way Mr. Lange expressed that. He said that it was her job, Judge, and he said she's not entitled to special protection. We're not asking that she get special protection. She was operating, doing her job, opposing her direct supervisor, who was about to go off and risk committing or furthering unlawful activity. In doing that, we're not asking that she get special protection. We're asking that she be treated like every other employee and she get normal protection. If she's engaged in opposition through her work as EEO officer, standing up to her supervisor, who says as a result of the PV charge, when he met with the person accused to have been the harasser, he comes out of that meeting and he says to her, I don't think there's any merit to this. I don't think we need to go forward. You're making some really good points, but they're not responsive to my question. I'm sorry, Your Honor. Okay, so they're excellent points, but here's the question I'm asking. The instruction just says you have a cognizable opposition claim. You have to rule for the plaintiff if what she was doing was investigating and making recommendations regarding the complaint. And so if she's an EEO person, she does that every single time there's a complaint. So how could – I'm struggling with why under the jury instruction, forget your theory of evidence and why it was so bad and goes beyond it. His point seems to be a fair one. Your Honor, there is – I'm looking at page 338 of the transcript of the jury instruction. In our case, Judge Gwynne instructed the jury properly that should they fine for the plaintiff, they were to determine the amount of – pardon me, it's the wrong instruction. Just tell me if I'm wrong. It says the critical language is the conduct is investigating and making recommendations regarding the complaint of gender discrimination and by investigating and making recommendations concerning the complaint of sexual harassment. So I guess I'm just struggling why that's an opposition claim if all you're doing is investigating and making recommendations. It's true in the course of doing that, opposition could develop. I get that point, but that's not what's going on with the instruction. I believe further in the instruction, and I can't pull it up off my notes right here. When the court instructs the jury as to the Abbott versus Crown elements of a retaliatory discharge case, he says first you must prove that she's within the protected zone under Title VII. So you're saying there's other instructions that show this by itself is not enough? That's right. And what do they say exactly? The first element of Abbott was you must show that the plaintiff is within the protected zone, that she was doing protected activity at the time that the conduct, she says. Okay, so far you're not helping because it's protected activity. Protected activity could either be opposition or engaged in or participating in an investigation. And then it goes on to say the other three elements, but it's the first element I want to focus on, that she is engaged in protected activity. If she's doing her job, the question is still is she engaged in protected activity? And the argument here is, from the plaintiff, she's opposed to unlawful activity. That's the fact question the jury has to decide. Was she opposing unlawful activity as she functioned as an EEO officer? That's all the judge instructed the jury to do. Determine that question. If you find that she was opposed to unlawful activity, she's entitled to protection. And then you go through the rest of the analysis. So the way you would say it, investigating and making recommendations are part of, can be part of an opposition claim, but you're saying you actually, the jury actually had to find that at some point in doing this, she opposed what this or that employee was doing. Yes. Okay. You solved my problem. Thanks. I see that I have four minutes left. I guess I want to go to one of the points that I was trying to make earlier, and that is let's not forget that this is the real point of opposition in my view. The most clear-cut instance of opposition in this case arises out of the Peavey incident, where after she tells Mr. Knott of the harassment charge, he privately meets with the person who is the accused harasser. And when she confronts him following that, he indicates to her that in his belief, there's no merit to the case or to the charge, and she has to tell him, hey, look, you don't have the right to decide that. She has to stand up to him and insist, I have to do an investigation. You've just met with the harasser in the presence of the other male witness to the incident, and you've put the agency at risk, but I'm going to go forward and do my job. If that isn't clear-cut opposition to unlawful activity, meaning not the unlawful activity, of course, was by the accused harasser, not by Knott's, but she stood up for Peavey and made clear that an investigation was going to be done on that sexual harassment charge, and if it wouldn't have been for her, I have serious doubts that this wouldn't have been just simply pushed under the rug. But the point is, she stood up. So this lady is just as entitled as anybody else who participates in response to an employer's questions during an in-house investigation, even before EEOC charges are brought. And I'm bringing to the Court's attention the important decision of Crawford. Crawford was a decision of the U.S. Supreme Court in which those circumstances led the judge to indicate that once someone speaks up and says this is wrong, once they do that, then almost invariably under EEOC guidelines constitutes opposition, which brings you into the ambit of protection of Title VII. Certainly this lady did that. And in response to, again, Mr. Lange's comment, they're looking for special protection, we're not looking for special protection. We're looking for normal protection, what every other employee under Title VII gets. The chilling effect of not doing that really threatens the integrity of the EEOC process. The EEOC, from an agency standpoint, depends on the integrity of internal investigations. EEO officers are integral to an efficient operation and protection of Title VII rights. And if in Crawford they were concerned about not having a chilling effect on behalf of employees who otherwise might participate and give testimony but won't if they think their own jobs are in jeopardy, that chilling effect concerned the Court in Crawford. But certainly the chilling effect of threatening EEO officers with retaliatory conduct because they stood up to you, they opposed you, and you are angered by it and you don't like it, that chilling effect is just as great, if not greater, a threat to Title VII integrity. For those reasons, Your Honor, and others mentioned in our brief, and I'll sit on my brief and sit down, I really hope that the Court lets the verdict stand. Thank you. Thank you. Mr. Lange. Thank you, Your Honor. It's not like Mr. Knotts didn't do anything when this guy was accused of harassing an employee. He had a meeting with the guy, heard him out, escorted him from the property, told him never to return again. Didn't want that in his house. Again, Mrs. Mengelkamp was not opposing some kind of unlawful activity by Mr. Knotts. She was simply opposing the manner in which he did his job, his involvement in interviewing the witness. She indicated that she did not believe this to be unlawful, this activity. She didn't know. On the issue of punitive damages, the Martini case, upon which this Court relied in Hall against Consolidated Railways, the instruction given by the jury was comprehensive and included a charge on both Washington law and federal law. And the Court found that those two were similar, and the jury instruction encompassed both the federal cause of action and the district cause of action. In this case, the judge merely instructed the jury that if they find that he was recklessly indifferent to federal rights, they can award punitive damages. That reckless indifference wasn't defined, nothing about the burden of proof, just by a preponderance of the evidence. In Ohio, actual malice has to be shown, and it has to be shown by clear and convincing evidence. I didn't hear anything in an instruction about that. Therefore, the punitive damages were solely on a federal claim. Even though, yes, we did stipulate, well, apparently the lawyers can stipulate the things, but when the judge takes something away from the jury, consideration of a state punitive damage claim, I think the judge is right there. And whatever the stipulation is of counsel falls by the wayside when that was made before the case commenced or the trial commenced. I think that the punitive damage award is subject to the limitation on damages set forth in the Code. So what do you ask this Court to do on the punitive damage award? Reduce it to $50,000? I'm asking that the whole verdict be reduced to $50,000, and that if the Court is inclined to not limit it to $50,000 and allow the state claim to not be subject to that, then that's just the compensatory damage claim that would be awarded, because there's no state punitive damages. Okay. Thanks to both of you for your oral arguments and legal briefs. We appreciate them, and the case will be submitted. The clerk may call.